TARANTO, Circuit Judge,
dissenting in part.
I join the court’s opinion except for Part II, which holds that element (b) of claims 1 and 28 must be construed so that the claimed layers must contain only the listed resins, ie., may not contain any unrecited resins (a construction that invalidates claim 10). The court’s opinion lays out the parts of the patent — the specification and dependent claims — that strongly indicate intended coverage of layers that include at least some unrecited resins. But the court holds that such coverage is excluded from element (b). The court reasons that the claim language has so plain a “closed” meaning — based on patent law’s settled approach to the “comprising”/“consisting of’ distinction and to the scope of Mar-kush-group claiming language — that a contrary reading would require support in other intrinsic evidence so compelling that even the strong evidence here is insufficient. I think that this is a close call, but I would conclude that the claim language is not so plain.
The operative claim language is “layer being selected from the group consisting of’ specified resins. That particular language does not make plain the precise relationship between “layer” and the listed resins — specifically, whether the layer may contain resins (or anything) other than the listed resins. If different language had been used, the relationship would have been plain based on settled patent-law (and ordinary English) meanings. But the language actually used is a step removed from the words that would have left no semantic uncertainty on the issue.
If the claim had said, “layer consisting of’ one or more of the listed resins, the meaning would have been plain. That language would have plainly conveyed that the layer must be made out of only the listed resins, and not others. As the court’s opinion explains, in patent law (and probably in the dominant strand of formal English), “consisting of’ means “including only” (“containing only,” “composed of only,” “made of only”). Such language would convey the well-established closed meaning that is the opposite of the equally well-established open meaning of “comprising,” which means simply “including.”
The language of element (b) in this case is different. In element (b), “consisting of’ does not follow and directly modify “layer”; it follows and directly modifies “group.” Thus, the phrase characterizes the relationship between “group” and the listed resins: the latter are all the mem *1367 bers of the former. It does not characterize the (closed or open) relationship between “layer” and what materials can be ingredients of the layer. The claim phrase naming that relationship is “selected from,” not “consisting of.” The established meaning of “consisting of’ therefore does not determine the meaning of the claim language here.
The claim language here is also different from traditional Markush-group language, which does include the phrase “selected from.” Although Markush claim language can vary, one aspect of the language seems to be essentially constant. Markush-group language characteristically recites “an X [being] selected from a group consisting of A, B, and C,” where A, B, and C are actually instances of X.[1] That is, the term (X) introducing the enumeration is a genus or generic descriptor — sometimes not even a word but a pure variable representing the group, e.g., In re Driscoll, 562 F.2d 1245, 1246 (CCPA 1977) — for species A, B, and C. See Merck, 190 F.3d at 1340. Here, for example, a generic term for the items listed in element (b) would be “resin,” so if the claim here used standard Markush-group language, it would refer to “resins [being] selected from the group consisting of’ the listed resins. See, e.g., ’055 patent, col. 1, lines 58-65. With such language, or language using a generic term like “materials,” it would be the combination of “selected from,” the “consisting of’ group language, and the genus-species relation that would make plain the closed nature of the relationship: the things named before “selected from” would have to he one or more of the listed species. Although the label “Markush group” or “Markush form” may be used more loosely to label “selected from the group ...” language, as it was in this ease, the label does not determine the interpretation. What is critical is that the closed-nature interpretation has been judicially settled only when the genus-species relationship has been present, as far as I can tell.
Element (b), at issue here, is different. It requires that a “layer,” not “resins” or “materials,” be “selected from” the group of listed resins. A “layer” is a structure (a “composition” in the sense of something composed) characterized at least by á spatial relationship to some other physical element, perhaps also by its shape (here it must be part of a “film,” suggesting thinness). See Multilayer Stretch Cling Film Holdings, Inc. v. Inteplast Grp. Ltd., No. 2:12-cv-2107, 2013 WL 5972195, at *19 (W.D. Tenn. Nov. 8, 2013) (“a polymer composition within the multilayer polymer structure lying over or under another”) (emphases added). The structure may be made from various materials {e.g., polymers plus other things), and the group here lists such materials.[2] The relationship *1368 between “layer” and the members of the specified group of materials, therefore, is not one of genus and species, and so is not defined by the inherent logic of the genus-species relationship. In brief, the meaning of the language at issue here cannot simply be borrowed from the meaning of traditional Markush-group language.
Element (b) is distinctive, and slightly imprecise, in calling for a spatial-relation-defined (and perhaps shape-defined) structure to be “selected from” a list of materials from which it can be made. The language is naturally understood as a shorthand for what is actually a pair of separate logical links: a link from “layer” to a generic term for ingredients (such as “resins” or “materials”); and a second link from the generic term to the Mar-kush-group list. The second link is clearly closed from the invocation of Markush-group terminology — “resins (materials) selected from the group consisting of’ the listed ones. But the first link in the expansion of element (b)’s shorthand is not clear. The expanded, more precise phrase could be “layer consisting of resins being selected from” the group or “layer comprising resins being selected from” the group. I cannot rule out either one as a way of translating the unusual language of element (b) into more precise terms.[3]
I am inclined to think that the former would be the better reading if we considered the claim words alone in light of background patent-law meanings. Indeed, I think that “selected from” is somewhat more suggestive of a closed concept than “made from” — which is the phrase that Multilayer proposed in the district court in expressly arguing for a construction open to unrecited resins. Multilayer v. Inteplast, 2013 WL 5972195, at *26.[4] But I do not think the meaning plain, and the claim language does not stand alone.
Once it is seen that there really is a semantic uncertainty in the claim language — that is the judgment call — we must .look to the specification and (here) dependent claims to resolve the uncertainty in a way that stays true to the range of permissible meanings of the language actually used. See Phillips v. AWH Corp., 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc) (approving as a succinct summary: *1369 “ ‘Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim. The construction that stays true to the claim language and most naturally aligns with the patent’s description of the invention will be, in the end, the correct construction.’ ”). For the reasons stated, I conclude that there is relevant imprecision in the claim words used here, ie., that they are not plain in the respect that is disputed, and that the “open” construction is a permissible one for the language used.
As the court’s opinion sets forth, the specification and dependent claims provide strong support for the “open” reading. See Maj. Op. at 1359-61. The specification describes three embodiments, two of which have an inner layer formed from a blend of LLDPE with LDPE, a resin not recited in the Markush group. ’055 patent, col. 7, line 15, through col. 8, line '40. Claims 10, 18, and 19, all depending on claim 1, claim those embodiments.
Of course, patentees sometimes write particular claims that exclude described embodiments (e.g., when other claims capture those embodiments) and sometimes mistakenly write dependent claims that invalidly add elements inconsistent with their independent claims. But except for the argument about the plainness of element (b)’s language, we have been pointed to no good reason to think that the paten-tees in this case excluded the just-noted embodiments from the independent claims or, therefore, wrote dependent claims that are invalid because inconsistent with the independent claims. The only real argument advanced for drawing those conclusions here is that the claim language is plainly to the contrary. As I have explained, I am not persuaded by that argument.
For those reasons, I respectfully dissent from the holding that the inner layers of claims 1 and 28 cannot include unreeited resins and that claim 10 is invalid.

. See, e.g., Fresenius USA, Inc. v. Baxter Int’l, Inc., 582 F.3d 1288, 1297 (Fed. Cir. 2009); Abbott Labs. v. Baxter Pharm. Prods., Inc., 334 F.3d 1274, 1276 (Fed. Cir. 2003); Biovail Corp. Int’l v. Andrx Pharm., Inc., 239 F.3d 1297, 1299 (Fed. Cir. 2001); Merck & Co. v. Mylan Pharm., Inc., 190 F.3d 1335, 1339 (Fed. Cir. 1999); In re Emert, 124 F.3d 1458, 1460 (Fed. Cir. 1997); N. Am. Vaccine, Inc. v. Am. Cyanamid Co., 7 F.3d 1571, 1573-74 (Fed. Cir. 1993); In re Bulloch, 604 F.2d 1362, 1363 (CCPA 1979); In re Skoll, 523 F.2d 1392, 1394 (CCPA 1975); In re Haas, 486 F.2d 1053, 1054 (CCPA 1973); In re Rainer, 305 F.2d 505, 506-07 (CCPA 1962); In re Azorlosa, 241 F.2d 939, 940 (CCPA 1957); Ex parte Dahlen & Zwilgmeyer, 42 U.S.P.Q. 208 (Pat. Off. Bd. App. 1938); Ex parte Clark & Malm, 11 U.S.P.Q. 52 (Comm'r Pat. 1930).

. The dispute over “layer” in the district court was not over the definitional spatial-relation requirement of “layer” (lying over or under another), or over any equating 'of the layer with what it was made from, but over whether "polymers” had to be among the materials from which it was made. The district court both recognized the distinction and identified the dispute when it summarized its *1368 conclusion: “one skilled in the art would understand the patent to teach that layers made from polymers or layers made from polymers combined with additives must be present in each of the seven layers.’’ Multilayer v. Inteplast, 2013 WL 5972195, at *19 (emphases added).

. For an example of a two-link "Markush form” phrase with the first link using open "comprising” language (while leaving "group” implied), see Merck, 190 F.3d at 1339 (a "polymer vehicle comprising 0-120 mg of a water-soluble polymer selected from hydroxypropyl cellulose [HPC], hydroxypro-pyl methylcellulose [HPMC], polyvinyl pyrro-lidone, polyethylene glycol, starch and methyl cellulose”) (emphases added). For an example with the first link using "consisting of,” see Shire Dev., LLC v. Watson Pharm., Inc., 787 F.3d 1359, 1362 (Fed. Cir. 2015) ("an inner lipophilic matrix consisting of substances selected from the group consisting of unsaturated and/or hydrogenated • fatty acid, salts, esters or amides thereof, fatty acid mono-, di- or triglycerid[e]s, waxes, ceramides, and cholesterol derivatives with melting points below 90° C”) (emphasis added).

. “Made from,” which can refer to origins or components, can have an "open” meaning in ordinary usage: e.g., one can say "Vicodin is made from hydrocodone” even though it also contains acetaminophen. Moreover, "made from” seems more open than "composed of,” which we have held is itself not always "closed,” but depends for its meaning in a particular patent on other intrinsic evidence. See AFG Indus., Inc. v. Cardinal IG Co., 239 F.3d 1239, 1245 (Fed. Cir. 2001). Indeed, "made from” is at least as open as "made up of,” and the court in AFG rejected a closed construction for “composed of” in the particular patent partly in reliance on Cardinal’s use of "made up of” as a term clearly permitting some unrecited components. Id. at 1246.